**NORTHERN ASSUR. CO., Limited, v.
GROSS et al.  (No. 2066.)**

Court of Civil Appeals of Texas. El Paso.
Dec. 8, 1927.

Rehearing Denied Jan. 5, 1928.

**I. Insurance ⬅665(4)—Evidence held sufficient to identify automobile stolen as one insured by defendant, notwithstanding mistake in motor number in policy.**

In suit on automobile theft insurance policy, evidence *held* sufficient to identify automobile stolen as the one which was insured by defendant, notwithstanding that by mistake or inadvertence the motor number specified in the policy was not the motor number of the stolen automobile.

**2. Limitation of actions ⬅127(4)—Amended petition in suit on automobile theft. policy, merely alleging mistake in motor number in policy, held not to state new cause of action barred by limitations.**

Amended petition, in suit to recover on automobile theft insurance policy, which merely alleged, in addition to allegations of original petition, that by mistake or inadvertence motor number given in policy was not number of car insured and sought to recover insurance on that car, *held* not to state new cause of action; and, since the original petition was not barred by limitation statute, the amended petition was not.

**3. Limitation of actions ⬅124—Four-year limitation statute held not to bar mortgagee's right to intervene in mortgagor's suit for automobile theft insurance begun within four years.**

Four-year limitation statute *held* not to bar right of mortgagee of automobile to intervene in mortgagor's suit against insurance company to collect theft insurance begun within four years, since the mortgagee did not assert a new cause of action but only claimed an interest in the cause of action already asserted against defendant.

**4. Insurance ⬅665(4)—Condition of automobile theft policy that some one not in insured's household or employ stole automobile may be proved by circumstantial evidence.**

In suit on automobile theft insurance policy providing that the theft must be by some one other than persons in insured's household or employ, the insured is not required to prove who stole his car, but may prove by circumstantial evidence that it was stolen by some one other than a member of his household or person in his employ.

**5. Insurance ⬅665(4)—Only preponderance of evidence is necessary to prove condition of automobile theft policy that some one not in insured's household or employ stole automobile.**

In suit on automobile theft insurance policy providing that theft must be by person other than one in insured's household or employ, only preponderance of evidence is necessary to establish the condition.

**6. Insurance ⬅665(4)—Evidence held to sustain finding of theft of insured automobile, by some one not in insured's household or employ.**

Evidence in suit on automobile theft insurance policy *held* to sustain finding that the theft was by some one other than person in insured's household or employ.

**7. Trial ⬅350(4)—In suit for automobile theft insurance, refusal of instruction submitting cancellation issue without submitting question of acceptance of new policy held proper under evidence.**

In suit for automobile theft insurance, refusal to give instruction submitting issue of whether policy sued upon was canceled, without submitting question of acceptance of new policy, *held* proper, where special issue submitting both questions together was given and evidence presented no issue of agreement to cancellation of defendant's policy without accepting another policy in lieu thereof.

**8. Insurance ⬅648(I)—In suit for automobile theft insurance, evidence that adjuster of another insurance company considered his company liable held immaterial.**

In suit on policy for automobile theft insurance, evidence that adjuster of insurance company other than defendant considered his company liable under a different policy *held* immaterial, notwithstanding contention that plaintiff had canceled its policy and accepted a policy in the other company in lieu thereof.

**9. Appeal and error ⬅1050(2)—Admitting hearsay evidence contradicting defendant's witness held harmless, where testimony contradicted was immaterial.**

Error in admitting letter, in suit on automobile theft policy, which was hearsay evidence to contradict testimony of defendant's witness, *held* harmless, where testimony contradicted was also immaterial and inadmissible.

Error from District Court, Dallas County; Kenneth Foree, Judge.

Suit by H. D. Gross against the Northern Assurance Company, Limited, wherein the Munger Automobile Company intervened. Judgment for intervener against plaintiff, and for plaintiff and intervener against the defendant, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Crane & Crane, of Dallas, for defendants in error.

PELPHREY, C. J. H. D. Gross, as plaintiff, brought this suit against the Northern Assurance Company, as defendant, in the district court of the Fourteenth judicial district of Texas, to recover $2,500 on an insurance policy alleged to have been issued by defendant on a certain Cadillac automobile owned

by him. Plaintiff alleged the issuance of the policy against theft, robbery, or pilferage; that the car had been stolen; that its value at the time of the issuance of the policy and the loss was $3,000; and that the Munger Automobile Company held a chattel mortgage on the car for $2,400. Later the Munger Company intervened, setting up their mortgage, and prayed for judgment against defendant for said $2,400 on the theory that the policy in question provided for loss payable to them as their interest might appear.

Defendant answered both petitions by general demurrer, special exceptions, and general denials. They also specially pleaded a cancellation of the policy prior to the loss.

The case was tried before a jury and submitted on special issues. The issues and the answers thereto are as follows:

"Special issue No. 1. Did some person, other than a person or persons in plaintiff's household, or in plaintiff's service or employment, on or about December 1, 1921, fraudulently take plaintiff's automobile from plaintiff's actual control, care, and management, without plaintiff's consent, with intent to deprive plaintiff of its value, and to appropriate it to the use or benefit of the person taking it? Answer 'yes' or 'no.' Answer: Yes.

"Special issue No. 2. What was the reasonable cash market value at Dallas, Tex., of the automobile in question on or about December 1, 1921? Answer in dollars, if any; in cents, if any. Answer: $2,800.

"Special issue No. 3. Did plaintiff agree with defendant's agent on December 1, 1921, that the policy sued on should be canceled at once and agree to accept the policy in the Central States Fire Insurance Company in lieu thereof? Answer 'yes' or 'no.' Answer: No.

"Defendant's requested charge to the jury, No. 4. Did the Munger Automobile Company agree with the defendant's agent on the forenoon of December 1, 1921, to a cancellation at once of the policy in the Northern Insurance Company, Ltd.? Answer 'yes' or 'no.' Answer: No.

"Defendant's requested charge to the jury, No. 5. Did the plaintiff, H. D. Gross, agree on the morning of December 1, 1921, with the agent of the Central States Fire Insurance Company to accept the $2,000 policy in said Central States Fire Insurance Company? Answer 'yes' or 'no.' Answer: No."

The court rendered judgment in favor of intervener Munger Automobile Company, against plaintiff H. D. Gross, for $3,291.20, and for costs of suit; and in favor of Gross and the Munger Automobile Company against the Northern Assurance Company, Limited, for $3,132.10, and all costs of suit, providing in the judgment that if and when the Northern Assurance Company, Limited, should pay to the Munger Automobile Company the sum adjudged against it, that said sum should be credited upon the judgment in favor of the Munger Automobile Company against Gross. From this judgment the Northern Assurance Company appeals.

## Opinion.

Defendant requested an instructed verdict against both the plaintiff and the intervener which the court refused. Defendant assigns error to the court's action in so refusing, and contends that such instruction should have been given for the following reasons:

1. That plaintiff and intervener had failed to show that the automobile upon which the policy was issued was the one that was lost.

2. That both plaintiff and intervener had filed their causes of action more than four years after the right of action accrued, and were therefore barred by the four-year statute of limitation.

3. That plaintiff had abandoned the cause of action set up in his original petition, and that the cause of action set up in his amended petition was barred by the statute.

4. That the policy insured against theft, robbery, and pilferage, excepting by any person or persons in the assured's household, or in the assured's service or employment, and excepting also the wrongful conversion, embezzlement, or secretion by mortgagor, or vendee in possession under mortgage, conditional sale, or lease agreement, and that the evidence was insufficient to show that the loss was not excluded by one of the above exceptions. Defendant contends that the automobile described in plaintiff's original petition was a four-passenger eight-cylinder touring Cadillac automobile, model 57, motor No. D371, and that the evidence shows a four-passenger, touring eight-cylinder Cadillac automobile, model 57–DD–371, and therefore the evidence was insufficient to show that the automobile lost was the one covered by the policy.

[1] In plaintiff's first amended petition he alleged that the car upon which the policy was issued was known as model 57, with motor number DD371, that through inadvertence and mistake it was described in the policy as having motor number D–371, and prayed that the contract be reformed so as to describe the automobile as model number DD–371.

Plaintiff testified that he bought, during November, 1921, a Cadillac automobile from the Munger Automobile Company, and that he gave them a chattel mortgage on the car for $2,400.00, and that the car disappeared from near his place of business on December 1, 1921. He also testified that the policy introduced in evidence as "Exhibit A" was the policy issued by defendant on his car. The automobile was described in the policy as a "1918 model 57 Cadillac, 4 Pass. touring, motor No. D–371, 8 cylinders," and advertised as 60 horse power.

J. R. Bower, vice president and general manager of the Munger Automobile Company, testified that the car was sold by them to plaintiff on November 16, 1921, and that plaintiff notified him on December 2, 1921, that the

car had been stolen; that Kirkpatrick's Insurance Agency had telephoned to him regarding the engine number and model of the car. W. L. Moore, a claim adjuster for Paul Kirkpatrick & Co., testified that he was sent over to talk to plaintiff about the loss of his car.

There being nothing in the evidence to show that plaintiff owned any car other than the one bought from Munger Automobile Company, and that being shown by the chattel mortgage to have engine number DD–371, we are of the opinion that the evidence is sufficient to show that the car stolen from plaintiff on December 1, 1921, was the car upon which the policy was issued by defendant; and that a mistake was made either by the Munger Automobile Company in furnishing the engine number or by the agents of defendant in describing the automobile in the policy.

Defendant's proposition as to the insufficiency of the evidence to identify the automobile as the one insured is overruled.

[2] Neither do we agree with the propositions of defendant as to the causes of action being barred by limitation. His contention is that plaintiff by the filing of his first amended petition on February 22, 1926, in which he alleged a different engine number of the automobile and by asking for a reformation of the insurance contract thereby abandoned his cause of action as alleged in his original petition, and that his cause of action alleged in his amended petition was barred both by the two-year and four-year statutes of limitation. He further contends that the right of action of intervener, being filed more than four years after December 1, 1921, was likewise barred.

The Supreme Court, in Phœnix Lumber Co. et al. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, has laid down four tests by which to determine the identity of causes of action:

"(1) Would a recovery had upon the original bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses?"

Applying the foregoing tests to the case at bar, does the first amended petition of plaintiff set up a new and different cause of action?

We find in the original petition that plaintiff was seeking to recover $2,500 insurance on "a four-passenger, eight-cylinder, touring, Cadillac automobile, model 57, motor No. D–371," and that in his amended petition he is seeking to recover $2,500 insurance on "a four-passenger, touring, eight-cylinder Cadillac automobile, model 57–DD–371," and in said petition he alleges that through inadvertence or by mistake in writing up the policy the car was described as having motor number D–371.

As said before, we think the evidence shows that the car that was intended to be covered by the policy was the one stolen, and that a mistake was made in getting the correct engine number incorporated in the policy. Plaintiff is suing for the same measure of damages; for the loss by theft of a four-passenger, eight-cylinder, touring, Cadillac automobile, being alleged in both petitions to be the same automobile upon which intervener held a chattel mortgage for $2,400, which fact was known to defendant as evidenced by the loss payable clause in the policy. Under this state of facts, we are of the opinion the amended petition presented no new cause of action, and consequently the statutes of limitation would have no application, in as far as plaintiff is concerned.

[3] The Commission of Appeals has held adversely to defendant's contention as to the application of the statutes to the cause of action of intervener.

In the cause of Foote v. O'Roork, 59 Tex. 215, Justice Watts, in discussing a similar question, said:

"But the interveners came into the case after the expiration of four years from March 31, 1870, and it is claimed that as to them the note is barred. It would seem that the suit by the plaintiffs would inure to the benefit of the true owners of the note, and would as to them suspend the running of the statute. The interveners do not assert a new cause of action, but only claim an interest in the cause of action already asserted against the defendant."

This holding was approved by the Supreme Court.

In the case at bar intervener is not asserting a cause of action different from the one pleaded in the amended petition, but is only praying for an application of so much of the amount recovered by plaintiff as will pay it the debt due it under its chattel mortgage; therefore, its right to assert such claim is not governed by the statute.

See, also, Field, Use & Co. v. Gantier and others, 8 Tex. 77.

[4-6] Defendant also claims that it was entitled to an instructed verdict because the evidence was insufficient to show that the loss was not excluded by one of the exceptions of the policy. The fact that an automobile was stolen, and that the thief was somebody other than a member of the owner's household or in his service or employment, may be shown by circumstantial evidence and only a preponderance of the evidence is necessary to establish that fact. Corporation of Royal Exchange Assurance of London v. Puckett (Tex. Civ. App.) 246 S. W. 705; Kansas City Regal Auto Co. v. Old Colony Insurance Co., 187 Mo. App. 514, 174 S. W. 153.

In the present case, plaintiff testified that he parked his car on Commerce street about a block and a half from his place of business about 5:30 p. m., and that when he went after

it about 9:20 p. m. it was gone and that he had not seen it since; that he immediately notified the authorities that his car had been stolen and the next morning notified the defendant; that he had some 14 people employed in his shoe shining parlor, but that they did not leave the place of business until 9 o'clock.

As was said by the San Antonio Court of Civil Appeals in Corporation of Royal Exchange Assurance of London v. Puckett, supra, "She lost it, and, as in other cases of theft, the thief did not leave his name or address," so in the case at bar, plaintiff would not be required to prove who stole his car, but could show by the circumstances that it was stolen by some one other than those of his household or in his employ. We think the facts sufficient to support the jury's findings on that issue.

[7] Defendant asked that the following instruction be given the jury by the court:

"Did the plaintiff, H. D. Gross, agree with defendant's agent on the forenoon of December 1, 1921, to a cancellation at once of the policy in the Northern Assurance Company, Limited?"

And complains of the court's failure to give said instruction. Special issue No. 3 given to the jury reads:

"Did plaintiff agree with defendant's agent on December 1, 1921, that the policy sued on should be canceled at once and agree to accept the policy in the Central States Fire Insurance Company in lieu thereof?"

Defendant in its answer alleged:

"That on the forenoon of December 1, 1921, the plaintiff agreed with the defendant to the cancellation of the policy sued upon and accepted from local agents, Paul Kirkpatrick Company, another policy in lieu of defendant's policy in the Central States Fire Insurance Company."

Mr. Wilson, a witness for defendant, testified relative to the cancellation of the policy, as follows:

"Probably ten days after the policy was issued, we received notice from the home office of the company to cancel it, and we then wrote another policy for an amount of $2,000 in the Central States Insurance Company. * * * I then delivered the $2,000 policy to Mr. Gross. I took the policy over there to him on the morning of December 1st, according to my best recollection, and explained to him that the Northern Assurance Company had written us and told us to cancel the Northern Assurance Company policy, and that I had written him a policy in the Central States Fire Insurance Company to cover his car, but that I would write it only for $2,000, and told him that I wanted to get the Northern Assurance Company's policy, and he told me that it was not at his store; that it was at home. I says, 'I will deliver this policy (the Central States policy) to you, but I want you to understand that there is only $2,000 on that car; that is all it

is insured for.' He accepted the policy and said that was all right. He said the amount we had written was all right with him. Then he said later on in our conversation that he thought perhaps he could get more from some of his friends, and I says, 'All right, if you can get more insurance, go on and get it, and we will cancel our Central States Fire Insurance Company's policy out, and if you cannot get more insurance, let me have the preference.' * * * When I got this notice from the Northern to cancel, I wrote Mr. Gross another policy in the Central States for a less sum and attempted to deliver it to him, and take up the Northern policy. On that occasion I told Mr. Gross that if he wanted to take advantage of the five days' notice of cancellation, under his policy it would be necessary for us to give him a written notice of the cancellation, but if he would accept the new policy and return the Northern policy to us, that we would cancel it out on that basis without any further notice to him.

"I testify that I did personally discuss the five-day notice of cancellation of that Northern Assurance policy with Mr. H. D. Gross, and he said all right; that he would waive that and take the $2,000 policy."

Plaintiff denied that he ever agreed either to cancel the Northern Assurance policy or accept the Central States policy in lieu thereof.

With this condition existing in the pleadings and the evidence, we think the issue which should have been submitted was the one which the court did submit in special issue No. 3, and that under the pleadings and the evidence no issue was made as to an agreement by plaintiff to the cancellation of the Northern Assurance Company's policy without accepting the Central States policy in lieu of it.

[8, 9] A letter purporting to be from the Central States Insurance Company signed by said company by E. D. McQueen, as adjuster, was read in evidence over the objection of defendant, and error is assigned to the court's action in its admission, defendant contending that the letter was inadmissible because it was not shown by the evidence to have been written by the Central States Fire Insurance Company or by E. D. McQueen on their behalf; and that said letter was immaterial, hearsay, and prejudicial and tended to contradict one of defendant's witnesses who had testified that said Central States Fire Insurance Company, through one of its adjusters, had offered to make payment on its policy to plaintiff.

W. L. Moore, a witness for defendant, testified, without objection, that the Central States Company, through one Mr. Hager, an adjuster, offered to make payment under its policy to plaintiff, or, at least, that he was under the impression that Mr. Hager was willing to pay under his company's policy.

It seems to us that the fact as to whether or not another insurance company's adjuster, under a different policy, considered his company liable, would be immaterial, and the tes-

timony of the witness Moore, as well as the letter introduced by plaintiff, were, in our opinion, immaterial and inadmissible. While we think the letter should not have been admitted, we think its introduction was harmless and therefore does not furnish grounds for a reversal.

The judgment of the trial court is affirmed. Affirmed.