## NEW YORK UNDERWRITERS INSURANCE COMPANY, Appellant,

v.

## TRUSTEES OF FIRST BAPTIST CHURCH OF RANGER,
Texas, Appellee.

No. 5483.

Court of Civil Appeals of Texas, Eastland.

July 31, 1980.

Rehearing Denied Aug. 28, 1980.

William N. Radford, Michael R. Knox, David M. Taylor, Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Tommy Warford, Turner, Seaberry & Warford, Eastland, for appellee.

McCLOUD, Chief Justice.

The Trustees of the First Baptist Church of Ranger, James Clark, Luther Fambro, Jerry Edwards, Kenneth Kirk and Bill McPheeters, sued the insurer of the church building, New York Underwriters Insurance Company, for damages to the building allegedly caused by malicious mischief. The jury found that the damage to a commode tank was caused by malicious mischief, and it would cost $9,767.10 to repair or replace carpet and other items damaged by water from the broken tank. The insurer appeals. We reverse and render.

The jury was instructed that, "Malicious mischief is a wanton, intentional act committed with the fixed purpose to damage or destroy property." The insurer contends there is no evidence to support the jury finding that the damage to the commode

tank was caused by malicious mischief. We agree. The trustees argue that malicious mischief can be shown by circumstantial evidence, and they point specifically to the testimony of Cecil Tollison, a ceramic engineer, who stated that in his opinion blows to the tank caused it to crack. There is no direct evidence of any person administering blows to the tank.

On the morning of August 2, 1977, it was discovered that water was coming from a restroom located on the upper floor of the church's educational building. Rev. Skaggs testified that when he entered the restroom he observed that the back of the tank was cracked from top to bottom. He added that several hours later on the same day, he again went to the restroom, and at that time noticed that the commode had "collapsed" into "three pieces." J. R. Hunt, a church member, testified that when he saw the tank on August 2, it was in "four or five" pieces. He stated it was cracked in the front. Luther Fambro testified that he looked at the commode tank on August 3, 1977, and observed a wide crack in the back. He also stated he thought it had another crack either on the front or at the end of one of the front sections. He said that the tank was still intact, but it was on the verge of collapsing.

On January 16, 1978, Dr. Johnson, a ceramic engineer, examined the commode tank in Dallas, Texas. He testified by deposition, for the insurer, that when he examined the tank it was in "four" pieces, and that he found no evidence that the tank had received a sharp blow. In May of 1978, Cecil Tollison, a ceramic engineer, employed by the manufacturer of the tank, examined the commode tank in Kilgore, Texas, after it had been picked up by a sales representative in Ranger. Tollison stated when he first observed the tank, it was packed in shredded paper and was in about a "dozen" pieces. He testified that he found four places where it had to be "hit" with something because the glaze was "chipped" off. He stated that in his opinion the blows to the tank caused it to crack. Tollison performed other tests on the tank, but it is unmistakably clear from his testimony, that

his opinion that the tank was struck with a heavy instrument, was based solely upon his observing "chips" in the glaze. He stated that the largest chip was about the size of a dime.

In deciding the insurer's no evidence point, we must consider only the evidence and inferences supporting the jury finding and reject the evidence and inferences contrary to the finding. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). We point out that there is no direct evidence, other than Tollison's opinion, that the tank was struck with an object. There is no evidence of a forced or unlawful entry, and there is no other evidence of vandalism or malicious mischief.

■ We agree with the trustees that malicious intent may be shown by circumstantial evidence. See *Jennings v. Farmers Mutual Insurance Association*, 260 Iowa 279, 149 N.W.2d 298 (1967); *Hatley v. Truck Insurance Exchange*, 261 Or. 606, 494 P.2d 426 (1972); *Pintsopolous v. Home Insurance Company*, 340 Mass. 734, 166 N.E.2d 559 (1960); *Lanza Enterprises, Inc. v. Continental Insurance Company*, 142 So.2d 580 (La. App., 3rd Cir. 1962); 23 A.L.R.3d 1259. The circumstantial evidence rule is discussed in 24 Tex.Jur.2d § 728 (1961) as follows:

> However, to establish a disputed fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference as to the existence of the fact; the circumstances in question may not amount to merely a surmise, suspicion, or purely speculative conclusion as to the fact's existence. Moreover, the circumstances relied on must themselves be proved by direct evidence; they may not be shown by inference or presumption.

See also *Burlington-Rock Island R. Co. v. Pruitt*, 160 S.W.2d 105 (Tex.Civ.App.— Waco 1942, writ ref'd). The circumstances relied upon in the above cited cases were established by direct evidence. In *Jennings* it was established that the open paint cans were placed near a pasture fence. The

water in *Hatley* was, without doubt, during the night or early morning, turned on full force and the hose placed near a building. A quart of sand was drained from the tractor's engine in *Pintsopolous*. The water had been turned on full force at some time during the weekend in *Lanza Enterprises, Inc.*.

The trustees must first prove that the tank was struck with an object, before the jury can properly infer that the act was wanton and intentional. The only evidence that the tank was struck is the opinion of Tollison, admitted over the insurer's objection that the condition of the tank had changed substantially between the time of the occurrence and the time of his inspection. The commode tank was examined by Tollison approximately ten months after the occurrence. The "tank" was by that time broken into about a "dozen" pieces. His opinion that the tank was struck was based on his visual observance of four "chips" in the glaze. There is no evidence that the chips were present when the event occurred. The witnesses testified only as to cracks in the tank. Tollison's testimony that the tank was struck with a heavy instrument is of necessity based on the inference that the chips were present when the damage was first discovered on August 2, 1977. A further inference must be made that the person striking the tank wantonly intended to damage or destroy the property. An ultimate fact is too conjectural and speculative to support a judgment when that fact is ascertained by pyramiding one inference upon another. *Wells v. Texas Pac. Coal & Oil Co.*, 164 S.W.2d 660 (Tex. Com.App.1942, opinion adopted). The court in *Texas Sling Company v. Emanuel*, 431 S.W.2d 538 (Tex.1968) said:

> In *Fort Worth Belt Ry. v. Jones*, 106 Tex. 345, 166 S.W. 1130 (1914), Chief Justice Brown, writing for this court in answering a certified question, laid down the following rule which has been generally followed in this state. (See, *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791 (1955)). The court in *Fort Worth Belt Ry. v. Jones* said:

> "A presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. 'No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption.' 16 Cyc. 1051; *Mo. Pac. Ry. Co. v. Porter*, 73 Tex. 307, 11 S.W. 324. * * *"

See also, *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059, *Farnie v. Fair Store, Inc.*, 304 S.W.2d 752 (Tex.Civ.App.1957, writ ref'd n.r.e.).

In *Imperial Casualty & Indemnity Company of Omaha, Nebraska v. Terry*, 451 S.W.2d 303 (Tex.Civ.App.—Tyler 1970, no writ), the court was confronted with a similar problem. There, the owner of a truck sought recovery under the malicious mischief provision of his insurance policy for damages to the truck allegedly caused by someone placing sand in the lubricating system of the engine. The truck broke down in Arizona. The oil, oil filter and certain parts were sent to the owner in Texas. The owner testified that he found sand in the oil and parts. The court held there was no competent evidence that any sand was found in the oil, oil filter or parts when they were disassembled and removed from the truck in Arizona. The court observed that it was not shown that the oil and parts at the time they were examined in Texas by the owner were in the same or substantially the same condition as they were at the time they were removed from the truck in Arizona. The testimony showed only that after the oil and parts were delivered to the owner in Texas, they were found to contain sand. The court said:

> " * * * Where circumstances are equally consistent with the existence and nonexistence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact." *South Texas Water Co. v. Bieri*, 247 S.W.2d 268, 274

(Tex.Civ.App., Galveston, 1952, writ ref. n.r.e.).

It is our opinion that the evidence in this case gives rise to nothing more than equal probabilities or possibilities as to the source of the sand which, in law, amounts to no evidence of the source, much less the human source which appellee had to establish. See *Calvert v. Union Producing Co.*, 402 S.W.2d 221, 227 (Tex.Civ.App., Austin, 1966, writ ref. n.r.e.); *Phillips Petroleum Co. v. West*, 284 S.W.2d 196, 198 (Tex.Civ.App., Galveston, 1955, writ ref. n.r.e.).

To sustain the judgment in this case it must be presumed that (1) there was sand in the lubricating system of the truck at the time it broke down in Arizona; (2) the sand found in the oil and the parts examined by appellee in Texas was therein when they were removed from the truck in Casa Grande; (3) it was put into the oil lubricating system by a human agency; and (4) it was put into the oil lubricating system willfully and with the intent to damage the truck. One presumption cannot be based upon another presumption. *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791, 794 (1955). See also 2 Ray, Texas Law of Evidence § 1458 (Texas Practice 3d ed. 1980).

We hold there is no evidence to support the jury's finding that the damage to the commode tank was caused by malicious mischief. The evidence leaves the cause of the damage a matter of speculation, conjecture and surmise.

The judgment of the trial court is reversed, and judgment is rendered that the trustees take nothing.

DICKENSON, J., not participating.